

FILED
NOV 21 2019
Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| DERRICK E. STEILMAN,<br><br>Petitioner,<br><br>vs.<br><br>REGINALD D. MICHAEL; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | Cause No. CV 19-38-BU-BMM-KLD<br><br>FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This case comes before the Court on state pro se Petitioner Derrick E. Steilman's application for writ of habeas corpus under 28 U.S.C. § 2254.

Steilman was directed to show cause as to why his petition should not be dismissed as time-barred; Steilman timely responded. (Docs. 5 & 6.) For the reasons set forth herein, Steilman's petition is untimely and should be dismissed with prejudice.

## I. Background

On October 1, 1999, Steilman pled guilty to deliberate homicide with the use of a weapon in Montana's Second Judicial District, Butte Silverbow County. On October 15, 1999, the district court sentenced Steilman to the Montana State Prison for a 100-year term on the deliberate homicide, with an additional 10-years for use

1

of a weapon, with the sentences running consecutively. *Steilman v. Michael*, 2017 MT 310, ¶ 8, 389 Mont. 512, 407 P. 3d 313.

On May 31, 2016, represented by pro bono counsel, Colin Stephens, Steilman filed an original petition for writ of habeas corpus in the Montana Supreme Court. Steilman claimed his sentence of 110 years, without the possibility of parole, violated the Eighth Amendment, because he was not afforded individualized sentencing, taking into account the distinct attributes of his youth, in contravention of *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, __ U.S. __, 136 S. Ct. 718 (2016).[1]

The Montana Supreme Court determined that while *Miller* and *Montgomery* apply to juvenile offenders in Montana serving life sentences without the possibility of parole, the sentence handed down to Steilman did not qualify as a *de facto* life sentence that would trigger Eighth Amendment protections. *Steilman*, 2017 MT 310, ¶ 23. Because Steilman was eligible for day-to-day credit under Montana's prior sentencing scheme, Steilman would be eligible for release after

---

[1] On June 25, 2012, in *Miller*, the United States Supreme Court recognized for the first time that sentencing juvenile offenders to life without parole, without consideration of certain factors relating to youth, is cruel and unusual punishment under the Eighth Amendment. *Miller,* 567 U.S. at 465. On January 25, 2016, in *Montgomery*, the Supreme Court found *Miller* was a new substantive rule of constitutional law that is retroactive to cases on state collateral review. *Montgomery*, 136 S. Ct. at 729, 732-36.

serving 55 years, contingent upon his behavior in prison.² *Id.* at ¶ 22. Additionally, the Court observed that Steilman's Montana sentence ran concurrently to a Washington state sentence for a separate homicide, which would result in Steilman potentially serving just over 31 years attributable solely to the Montana homicide. *Id.* at ¶¶ 22-23. Steilman's petition was denied.

Steilman timely filed a petition for a writ of certiorari. On May 14, 2018, the United Sates Supreme Court denied Steilman's petition. *Steilman v. Michael*, 138 S. Ct. 1999 (Mem.), 201 L. Ed. 2d 260, 86 USLA 3575.

Steilman filed the instant habeas petition on July 25, 2019. See, (Doc. 1 at 8).³

## II. Claims

Steilman alleges his Montana state juvenile life sentence of 110 years without the possibility of parole is illegal in light of *Montgomery* and *Miller* and should be considered a *de facto* life sentence. Steilman asks this Court to remand

---

² Under Mont. Code Ann. § 53-30-105, which was in effect at the time Steilman committed his offense, he was eligible for day-to-day good time credit. This statute was repealed in 1997.

³ "When a prisoner gives prison authorities a habeas petition or other pleading to mail to court, [pursuant to the mailbox rule,] the court deems the petition constructively 'filed' on the date it is signed[,]" *Roberts v. Marshall*, 627 F. 3d 768, 770 n. 1 (9th Cir. 2010); *Houston v. Lack*, 487 U.S. 266, 276 (1988), which in this case was July 25, 2019.

3

his case to the state district court for resentencing.

### III. Federal Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) a state prisoner must file his petition for a writ of habeas corpus within a one-year limitations period. 28 U.S.C. § 2244(d)(1). This limitations period "run[s] from the latest of" several dates, including "( C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id*. The Supreme Court clarified that similar language in 28 U.S.C. § 2255 (applicable to federal prisoners) means that the one-year limitation period begins to run when the new right is recognized by the Supreme Court, not when it is made retroactive. See, *Dodd v. United States*, 545 U.S. 353, 357 (2005). Accordingly, the limitations period began to run from the date the Supreme Court decided *Miller*, not from the date *Montgomery* was issued.

The Supreme Court handed down its decision in *Miller* on June 25, 2012; the following day Steilman's one-year time clock began to run. Thus, a federal habeas petition asserting a *Miller* violation must have been filed no later than June 25, 2013. But Steilman did not present any *Miller*-based claim until he filed his petition for a writ of habeas corpus in the Montana Supreme Court May 31, 2016. By this date, the one-year federal limitations period had long since expired.

4

Moreover, once the federal statute of limitations has run, a newly filed state petition does not reset the clock. *Ferguson v. Palmateer*, 321 F. 3d 820, 823 (9th Cir. 2003)("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); see also, *Jiminez v. Rice*, 276 F. 3d 478, 482 (9th Cir. 2001); *Larsen v. Soto*, 742 F. 3d 1083, 1088 (9th Cir. 2013). Because Steilman first raised his *Miller* claim more than one year after the right was initially recognized, his claim is facially untimely under AEDPA.

**Equitable Tolling**

The statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented the timely filing of the habeas petition. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

The standard for equitable tolling of AEDPA's one-year limitations period is a very high bar and is reserved for rare cases. *Miranda v. Castro*, 292 F. 3d 1063, 1066 (9th Cir. 2002) ("Indeed, the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.")(citations omitted). It is the petitioner's burden to establish that equitable tolling is warranted. *Pace*, 544 U.S. at 418; *Rasberry v. Garcia*, 448 F. 3d 1150, 1153 (9th

Cir. 2006). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). A Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. See, *Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1060 (9th Cir. 2007).

In response to this Court's Order, Steilman asserts he was advised by Stephens that he had one year and 90 days from May 14, 2018, in which to file his federal habeas petition in this Court. (Doc. 6 at 1.) Steilman also states he has been diligently attempting to file his petition, but he is currently incarcerated in Washington state and his lack of legal knowledge and lack of access to Montana law materials has encumbered his efforts. *Id.* at 2-3. Steilman reiterates that he is not making a straight *Miller* claim, rather he is challenging the constitutionality of the Montana Supreme Court's interpretation of *Miller* and *Montgomery* as applied to his sentence. *Id.* at 1, 3. Steilman also asserts he should be appointed counsel due to the complexity of his case. *Id.* at 2-3.

But a prisoner's pro se status, ignorance of the law, or lack of legal representation do not constitute extraordinary circumstances to justify equitable tolling. See e.g., *Rasberry*, 448 F. 3d at 1154; see also, *Ford v. Piler*, 590 F. 3d 782, 789 (9th Cir. 2009)(equitable tolling standard "has never been satisfied by a

6

prisoner's confusion or ignorance of the law alone.") Likewise, even assuming for the sake of argument that Stephens did provide Steilman with incorrect filing information, such negligence by counsel also does not qualify as an extraordinary circumstance to justify equitable tolling. See, *Miranda*, 292 F. 3d at 1067-68 (attorney miscalculation of filing date is not a circumstance justifying equitable tolling, even though petitioner filed his petition within the time period calculated by the attorney); see also, *Malcolm v. Payne*, 281 F. 3d 951, 962-63 (9th Cir. 2002); *Frye v. Hickman*, 273 F. 3d 1144, 1145-46 (9th Cir. 2001), cert. denied, 535 U.S. 1055 (2002)(counsel's general negligence does not warrant equitable tolling).

Additionally, to the extent that Steilman alleges the Montana Supreme Court misapplied Montana law, the argument is unavailing. The Montana Supreme Court is the final authority on interpretation of state law. A state court's interpretation of state law is binding upon a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546, US 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, even if Steilman had access to Montana state law materials, this Court could not review the Montana Supreme Court's decision on state law grounds.

Likewise, Steilman's lack of access to certain legal resources constitutes "ordinary prison limitations" and does not rise to the level of an extraordinary circumstance sufficient to warrant equitable tolling, because such conditions are

"hardly extraordinary given the vicissitudes of prison life." *Chaffer v. Prosper*, 592 F. 3d 1046, 1049 (9th Cir. 2010)(quoting *Ramirez v. Yates*, 571 F. 3d 993, 997 (9th Cir. 2009)). But even assuming Steilman had access to unlimited legal resources and/or appointed counsel following the Montana Supreme Court's denial of his state habeas petition, it still would have been impossible for him to meet a federal filing deadline that had already expired.

Steilman has not shown that he is entitled to equitable tolling which would render his petition timely. The petition should be dismissed.

## IV.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because Steilman has not established an adequate basis to excuse the untimely filing of his petition. There

are no close questions and there is no basis to encourage further proceedings at this time.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. Mr. Steilman's Petition (Doc. 1) should be DISMISSED WITH PREJUDICE as time-barred without excuse.

2. The Clerk of Court should be directed to enter a judgment in favor or Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

Mr. Steilman may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

DATED this 21st day of November, 2019.

Kathleen L. DeSoto
United States Magistrate Judge

---

[4] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Steilman is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.